IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01019-MJW

PAMELA J. WILLIAMS,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

---

## OPINION AND ORDER

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

The government determined that Plaintiff is not disabled for purposes of the

Social Security Act.  Plaintiff has asked this Court to review that decision.  The Court

has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this

case decided by a U.S. Magistrate Judge under 28 U.S.C. § 636(c).

### <u>Standard of Review</u>

In Social Security appeals, the Court reviews the decision of the administrative

law judge ("ALJ") to determine whether the factual findings are supported by substantial

evidence and whether the correct legal standards were applied.  *See Pisciotta v. Astrue,*

500 F.3d 1074, 1075 (10th Cir. 2007).  "Substantial evidence is such evidence as a

reasonable mind might accept as adequate to support a conclusion.  It requires more

than a scintilla, but less than a preponderance."  *Raymond v. Astrue*, 621 F.3d 1269,

1271–72 (10th Cir. 2009) (internal quotation marks omitted).  The Court "should, indeed

must, exercise common sense" and "cannot insist on technical perfection."  *Keyes-*

2

*Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).  The Court cannot reweigh the

evidence or its credibility.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## Discussion

At the second step of the Commissioner's five-step sequence for making

determinations,[1] the ALJ found that Plaintiff "has the following severe impairments:

degenerative disc disease of the lumbar spine, [and] osteoarthritis affecting the

shoulders and hips."  (AR 22.)  Together with Plaintiff's non-severe limitations, the ALJ

then determined that Plaintiff has the following residual functional capacity ("RFC"), as

is relevant here:

> [Plaintiff] has the residual functional capacity to perform light work . . . with
> the following limitations: the claimant cannot be required to lift more than
> 20 pounds occasionally and 10 pounds frequently; she cannot be required
> to stoop, balance, crouch, or climb stairs more than occasionally; she
> cannot be required to climb ladders, ropes or scaffolds; she cannot be
> required to sit more than 6 hours in an 8-hour day; she cannot be required
> to sit for more than 45 minutes at one time without the opportunity to
> stand; she cannot be required to stand or walk for more than 4 hours out
> of an 8-hour workday; she cannot he required to work above shoulder
> level with the upper extremities; she cannot be required to push or pull
> with the feet; she cannot he required to work at unguarded heights or near
> unguarded hazardous mechanical equipment; she cannot be required to
> operate a motorized vehicle.

(AR 24.)  At the fourth step of analysis, the ALJ found that Plaintiff "is capable of

performing past relevant work as a customer service representative" and therefore that

Plaintiff is not disabled.  (AR 27.)

Plaintiff asserts three reversible errors: first, that the ALJ handled opinion

evidence improperly; second, that the ALJ's credibility determination was not supported

---

[1] The Social Security Administration uses a five-step sequential process for reviewing
disability claims.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

by substantial evidence; and third, that the ALJ's findings as to past relevant work were not supported by substantial evidence.

## I.   <u>Weighing Medical Opinions</u>

The Commissioner is required to evaluate all evidence meeting the definition of a "medical opinion" according to specific rules.  20 C.F.R. § 404.1527.  The weight to be given to an opinion must be based on "examining relationship," "treatment relationship," "supportability," "consistency," "specialization," and "any [other] factors . . . which tend to support or contradict the opinion."  § 404.1527(c)(1)-(6).  Medical opinions that come from a "treating source" receive preferred treatment, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [] impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations."  § 404.1527(c)(2).  Thus, if a treating source provides a medical opinion, the opinion will be given controlling weight if it (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "is not inconsistent with the other substantial evidence in [the] record."  *Id.*  If it is not given controlling weight, it will nonetheless be weighed along with all other opinions.

There are two medical opinions in the record.  Plaintiff argues that both were mishandled.

### A.   <u>Dr. Hodge</u>

The first medical opinion is from Dr. Hodge, a consultative examiner.  The ALJ assigned it "little weight," finding that "there is no indication in the record that Dr. Hodge

reviewed treatment records as part of his examination, and those treatment records could have alerted Dr. Hodge to the claimant's history of presenting as more limited during an examination than when observed outside of the examination room."  (AR 26.) Although an ALJ cannot discount an opinion on the *sole* basis that the opinion comes from a medical source without a treatment relationship, *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012), the treatment relationship and the degree to which an opinion is consistent with other evidence are proper considerations, *see* § 404.1527(c)(2), (4).  The ALJ's stated reason implicates both of these considerations. The ALJ thus applied the correct legal standard, and his analysis can be second-guessed here only if the ALJ's stated reason is unsupported by substantial evidence.

It is true that Dr. Hodge did not review treatment records.  It is also true that the treatment records suggest malingering:

- On September 7, 2011: "pain out of proportion to exam," with notation for "drug-seeking behavior" (AR 307);

- On January 3, 2012: "Unable to assess lower motor [due to] patient noncompliance and lack of effort due to pain.  [Patient] noted to walk with stiff [left] leg in room but walks comfortably when leaving office out to car"; "pain out of proportion to exam," with notation for "drug-seeking behavior." AR 304);

- On April 24, 2014: "My eval is [consistent with] previous evals . . . pain is chronic, not operable, out of proportion to exam and exam limited b[y] lack of effort and apparent pain (although patient seen walking comfortably through waiting room into parking lot).  Functional capacity eval filled out for SSDI although I feel that [patient] is not disabled to the point of not being able to be retrained."  (AR 364.)

In fact, although Dr. Hodge found Plaintiff generally credible, he too saw signs of malingering.  (AR 316.)  Thus, the ALJ's reasoning—that Dr. Hodge's opinion is not fully consistent with medical records suggesting malingering, and that Dr. Hodge's opinion

might well have been different had he been aware of such concerns—is supported by substantial evidence.  The Court therefor rejects Plaintiff's argument as to Dr. Hodge's opinion.

B.   Dr. Miller

The second medical opinion is from Dr. Miller, Plaintiff's primary care physician.

The ALJ gave the following reasons for discounting this opinion as well:

> Here, Dr. Miller . . . endorsed some limitations, particularly in the areas of sitting, standing, and postural activity, that are not consistent with the objective findings in the evidence of record.  As the treatment record does not detail objective findings or examination reports that support Dr. Miller's conclusions, and instead actually erodes the credibility of the claimant's subjective pain complaints by highlighting inconsistencies between subjective complaints of severe pain and more benign exam findings, Dr. Miller's statements suggesting that the claimant is disabled and her evaluation of the claimant's RFC cannot be given great weight.  Perhaps most erosive of the value of Dr. Miller's opinion, and especially erosive of the credibility of her letter suggesting that the claimant is disabled, is an April 2013 treatment note in which Dr. Miller concurs with previous evaluations indicating that the claimant's pain reports are out of proportion with exam findings and states that she filled out the medical source statement work "although I feel that [the claimant] is not disabled to the point of not being able to be retrained."

(AR 26-27 (internal citation to the record omitted).)  These reasons concern whether the proffered limitations were supported by Dr. Miller's own treatment records.  This is a factor the ALJ is required to consider both as to controlling weight and as to relative weight.  § 404.1527(c)(2), (3).  The ALJ thus applied the correct legal standard, and his analysis can be second-guessed here only if the stated reasons are unsupported by substantial evidence.

For the same reasons as discussed above with regard to Dr. Hodge's opinion, the ALJ's stated reasons for discounting Dr. Miller's opinion are supported by

substantial evidence,.  Further, the treatment records are replete with mild descriptions of Plaintiff's condition, detailing relatively full range of motion and generally normal gait, matched with a relatively conservative treatment history.  The Court therefor rejects Plaintiff's argument as to Dr. Miller's opinion.

## II.   Credibility Determinations

"Credibility determinations are peculiarly the province of the finder of fact," and the Court "will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).  However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Huston v. Bowen*, 838 F2d 1125, 1133 (10th Cir. 1988).

Here, the ALJ's credibility determination rested primarily on the same three treatment notes itemized above, along with instances of Plaintiff giving statements that appear inflated when compared to exam findings.  Plaintiff argues that this was error.  Specifically, Plaintiff argues that the exam notations from September 2011 and January 2012 pre-date the actual medical imaging showing degenerative disc disease.  This may be true as to those two statements, but it is *not* true as to Dr. Miller's stronger statements from April 2013.  Further, the remainder of Plaintiff's treatment records do not reflect any additional treatment, above what was prescribed in 2011 and early 2012.  There is enough evidence for a reasonable mind to believe that Plaintiff exaggerated her symptoms.  As a result, the Court rejects Plaintiff's argument on this point.

7

### III.   Past Relevant Work

Plaintiff finally argues that the vocational expert misclassified her relevant past work making collections calls for an insurance company, categorizing it as a "customer service representative" in the *Dictionary of Occupational Titles* ("DOT") rather than a "collections clerk."  But assuming *arguendo* that this is true, it makes no difference.  The ALJ found that someone with Plaintiff's limitations could do this job as Plaintiff actually performed it.  *Perotin v. Colvin*, 110 F. Supp. 3d 1048, 1055-56 (D. Colo. 2015) ("Any such error undoubtedly was harmless, however, since the conclusion that a claimant is capable of performing her past relevant work is supportable if her residual functional capacity is coextensive with the demands of the job either as generally performed in the national economy or as plaintiff actually performed it." (internal alteration and quotation marks omitted)); *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) ("Therefore, claimant bears the burden of proving his inability to return *to his particular former job* and to his former occupation as that occupation is generally performed throughout the national economy." (emphasis added)).  So long as the ALJ's finding that Plaintiff could perform her past relevant work as actually performed is supported by substantial evidence, any mistake in identifying the DOT title is immaterial.

Here, Plaintiff described—briefly—the job.  She testified that she "was doing ICD9s,"[2] "calling up healthcare . . ." and that "[i]t's a billing – for a billing company.  I was

---

[2] The Court assumes this is a reference to International Statistical Classification of Diseases and Related Health Problems, *i.e.*, ICD-9 codes, the codification system used

8

calling and making – making sure people were paying their bills." (AR 67.)  She further testified that she left the job to take another job, not because of any inability to do the work.  (AR 69-70.)  The vocational expert heard this testimony, and testified that a hypothetical person with limitations like Plaintiff's could still do this job.  This is sufficient evidence to support the ALJ's findings.  The Court rejects Plaintiff's argument on this point.

## Conclusion

For the reasons set forth above, the Commissioner's decision is AFFIRMED.

Dated this 13th day of April, 2016.

BY THE COURT:

*/s/ Michael J. Watanabe*
MICHAEL J. WATANABE
United States Magistrate Judge

---

for healthcare billing.  *See* Wikipedia, International Statistical Classification of Diseases and Related Health Problems, http://tinyurl.com/oamnuu6 (accessed on April 12, 2016).